**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ISAIAH HEREFORD | : | |
| | : | |
| Appellant | : | No. 146 WDA 2018 |

Appeal from the PCRA Order January 11, 2018
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s): CP-02-CR-0010538-2010

BEFORE:   SHOGAN, J., DUBOW, J., and STEVENS*, P.J.E.

MEMORANDUM BY DUBOW, J.:                    **FILED MARCH 08, 2019**

Appellant, Isaiah Hereford, appeals from the Order entered January 11, 2018, denying his Petition for collateral relief filed under the Post Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541-9546.  We affirm.

This Court has previously stated the background of this case as follows:

[O]n the evening of June 14, 2010, Brittany Poindexter went to her brother's apartment in the Crawford Village housing complex in the McKeesport area for what turned out to be a surprise 18th birthday party.  The party went on for several hours, with both family and friends present, and eventually guests began to leave.  By the early morning hours of June 15, 2010, only five (5) people were left:  Brittany, her brother Jahard, Jahard's boyfriend/roommate Marcus Madden, Brittany's boyfriend Tre Madden[,] and their friend, Angela Sanders.  Shortly after 1:00 a.m., someone knocked on the screen door of the apartment; it was generally presumed that the person was there to buy a cigarette, since Jahard and Marcus sold cigarettes and marijuana out of the apartment.  Marcus got up to open the door and when he did, two (2) men entered holding guns. The men told everyone to "get down" and asked "where's the money?"  When Jahard got up to get the money, the men started shooting.   Jahard

_____

*   Former Justice specially assigned to the Superior Court.

Poindexter, Tre Madden[,] and Angela Sanders were killed in the gunfire[,] and Marcus Madden was shot and injured. At trial, Marcus Madden identified [Appellant] as the first man who entered the apartment with a gun and one of the shooters.

***Commonwealth v. Hereford***, No. 232 WDA 2015, unpublished memorandum at 1 (Pa. Super. filed May 3, 2016) (quoting Trial Court Op., filed 5/20/15, at 3) (footnote omitted), *appeal denied*, 158 A.3d 74 (Pa. 2016).

In August 2011, a trial commenced, following which the jury convicted Appellant of three counts of Second-Degree Murder, two counts of Aggravated Assault, and one count each of Robbery, Burglary, and Conspiracy.[1] ***Id.*** In December 2014, the court sentenced Appellant to three consecutive terms of imprisonment of fifteen years to life.[2] ***Id.*** at 2.

Appellant timely filed a Post-Sentence Motion, asserting in relevant part that he was entitled to a new trial based on after-discovered evidence. **See** Appellant's Post-Sentence Motion, 12/23/14. According to Appellant, Ms. Gina Simmons, a neighbor of Appellant's girlfriend, had come forward and would corroborate Appellant's alibi that he was sitting on his girlfriend's porch

---

[1] 18 Pa.C.S. §§ 2502(b), 2702(a)(1), 3701(a)(1), 3502(a)(1), 903(a)(1), respectively.

[2] Initially, Appellant was sentenced to mandatory life imprisonment with no opportunity for parole. ***Id.*** at 1. However, Appellant was seventeen years old when he committed the murders. ***Id.*** Following the United States Supreme Court decision in ***Miller v. Alabama***, 567 U.S. 460 (2012) (holding that mandatory life sentences without the possibility of parole were illegal for those offenders who commit their crimes prior to the age of eighteen), the trial court re-sentenced Appellant as indicated above. ***Hereford***, No. 232 WDA 2015, unpublished memorandum at 1.

approximately fifteen minutes after the murders. *See id.* at 3 (unpaginated); *Hereford*, No. 232 WDA 2015, unpublished memorandum at 2. The trial court denied Appellant's Motion.

On appeal, this Court affirmed the Judgment of Sentence. *Hereford*, No. 232 WDA 2015, unpublished memorandum at 9. The only issue pursued by Appellant on direct appeal concerned his claim of after-discovered evidence. *Id.* at 2. We rejected the claim in detail, concluding that: (1) Appellant could have obtained testimony from Simmons previously with the exercise of reasonable diligence; (2) Simmons' testimony was merely cumulative of other evidence presented at trial; (3) Simmons' testimony was now inadmissible as it merely impeached testimony from eyewitness Madden; and (4) Simmons' testimony was unlikely to compel a different verdict if a new trial was granted. *Id.* at 2-9.

In September 2017, Appellant timely filed a Petition seeking collateral relief. According to Appellant, his trial counsel had been ineffective for: (1) failing to locate previously and call Simmons as a witness; (2) failing to file a pre-trial motion seeking leave to call an expert in eyewitness identification; (3) failing to argue in closing that documentary evidence at trial had established Appellant did not know his Co-Defendant or accompany him to the scene of the murders; and (4) failing to obtain a toxicology report documenting that eyewitness Mr. Marcus Madden was intoxicated at the time of the murders. Appellant's PCRA Petition, 9/22/17, at 4-10.

In January 2018, the PCRA court held an evidentiary hearing, at which Appellant adduced testimony from Simmons, as well as his trial counsel, Richard Narvin, Esq. *See generally* N.T. PCRA, 1/10/18. Thereafter, the court denied Appellant's Petition. *See* PCRA Court Order, 1/11/18.

Appellant timely appealed and filed a court-ordered Pa.R.A.P. 1925(b) Statement. The PCRA court issued a responsive Opinion.

Appellant raises the following issues on appeal:

1. [Whether] the [PCRA] court err[ed] in denying Appellant's PCRA Petition since trial counsel was ineffective for failing to call an identification expert witness at trial, or to request appointment of an expert, to preserve the issue for appeal since the [Pennsylvania] Supreme Court had granted *allocatur* in *Commonwealth v. Walker*[, 92 A.3d 766 (Pa. 2014)]? Moreover, the [PCRA] court erred in failing to permit an identification expert to testify at the PCRA hearing[;]

2. [Whether] trial counsel was ineffective for failing to discover witness Gina Simmons or call her as a witness at trial[;]

3. [Whether] trial counsel was ineffective for failing to argue in closing argument that a letter from Co-Defendant DeAnthony Kirk that stated that Appellant was not involved in the instant crimes and that Kirk did not know Appellant[;]

4. [Whether] trial counsel was ineffective for failing to request pre-trial dismissal of the instant charges [because] the affidavit of probable cause omitted material facts and was based on false information from an unreliable source[; and]

5. [Whether] the PCRA court erred by hampering PCRA counsel's question[ing] of his witnesses[:] by failing to allow a witness to testify regarding the route Appellant would have had to take to arrive at Montaeya White's porch[;] by not allowing trial counsel's testimony/opinion regarding the damaging impact of Marcus Madden's trial testimony[;] by not allowing trial counsel's testimony regarding the potential impact of identification expert Reardon if she had testified at trial[;] and

by not allowing trial counsel to testify that Appellant's conviction constituted a miscarriage of justice.

Appellant's Br. at 3-4 (unnecessary capitalization removed).

We review an order denying a petition for collateral relief to determine whether the PCRA court's decision is supported by the evidence of record and free of legal error. *Commonwealth v. Jarosz*, 152 A.3d 344, 350 (Pa. Super. 2016) (citing *Commonwealth v. Fears*, 86 A.3d 795, 803 (Pa. 2014)).

Appellant contends that trial counsel was ineffective. We presume counsel is effective. *Commonwealth v. Cox*, 983 A.2d 666, 678 (Pa. 2009). To overcome this presumption, a petitioner must establish that: (1) the underlying claim has arguable merit; (2) counsel lacked a reasonable basis for his act or omission; and (3) petitioner suffered actual prejudice. *Commonwealth v. Treiber*, 121 A.3d 435, 445 (Pa. 2015). In order to establish prejudice, a petitioner must demonstrate "that there is a reasonable probability that, but for counsel's error or omission, the result of the proceeding would have been different." *Commonwealth v. Koehler*, 36 A.3d 121, 132 (Pa. 2012). A claim will be denied if the petitioner fails to meet any one of these prongs. *See Jarosz*, 152 A.3d at 350 (citing *Commonwealth v. Daniels*, 963 A.2d 409, 419 (Pa. 2009)).

In his first issue, Appellant contends that trial counsel was ineffective for failing to secure testimony from an identification expert at trial. Appellant's Br. at 10. According to Appellant, such testimony would have been useful to

"cast serious doubt on [victim, Marcus] Madden's trial identification" of Appellant as the shooter. *Id.* at 13.

At the time Appellant's trial commenced in August 2011, the law in Pennsylvania *per se* barred such expert testimony. **See Commonwealth v. Walker**, 92 A.3d 766, 793 (Pa. 2014) (prospectively affording the trial court discretion to admit expert testimony regarding eyewitness identification). Any attempt by counsel to introduce testimony from an identification expert would have been unsuccessful. As Appellant's claim is without merit, trial counsel was not ineffective. **See Jarosz**, 152 A.3d at 350.

Appellant concedes the state of the law at the time of his trial. Appellant's Br. at 12. Nevertheless, noting that our Supreme Court had granted *allocatur* in **Walker** in April 2011—months prior to his trial—Appellant suggests that counsel should have preserved this evidentiary issue for appellate purposes. *Id.* at 12-13. According to Appellant, had counsel done so, this Court would have granted Appellant a new trial on direct appeal. *Id.* (noting his Judgment of Sentence was not final until September 2016, after the Supreme Court had issued its decision in **Walker**).

Appellant has cited no authority in support of this argument, nor has our research revealed any.[3] To the contrary, "counsel's stewardship must be

---

[3] We admonish Appellant that his failure to cite authority in support of his argument risks waiver. **See Commonwealth v. Brewer**, 876 A.2d 1029, 1035 (Pa. Super. 2005) (concluding that an appellant failed to demonstrate entitlement to relief where he cited no authority in support of his argument); Pa.R.A.P. 2119(a).

judged under the existing law at the time of trial[.]" **Commonwealth v. Todaro**, 701 A.2d 1343, 1346 (Pa. 1997). Thus, we will not engage in a hindsight analysis or deem counsel ineffective for failing to anticipate a change in the law. **See, e.g.**, **Commonwealth v. Brown**, 196 A.3d 130, 178 (Pa. 2018) (applying this principle to a claim premised upon **Walker**); **Commonwealth v. Cox**, 863 A.2d 536, 554 (Pa. 2004) (declining to consider post-trial changes in law governing jury instructions in death penalty case); **Commonwealth v. Triplett**, 381 A.2d 877, 881 (Pa. 1977) (declining to consider subsequent, *per se* rules for juvenile waivers of **Miranda** rights). Accordingly, Appellant's first ineffective assistance claim warrants no relief.[4]

In his second issue, Appellant contends that trial counsel was ineffective for failing to locate Simmons previously or secure testimony from her at trial. Appellant's Br. at 14. According to Appellant, Simmons' testimony would have corroborated his alibi defense and "likely garnered an acquittal of all charges against Appellant." **Id.** at 15.

In order to establish ineffectiveness of trial counsel for the failure to call a potential witness, a petitioner must establish "(1) the witness existed; (2) the witness was available to testify for the defense; (3) counsel knew of, or should have known of, the existence of the witness; (4) the witness was willing

---

[4] Appellant also asserts that the PCRA court erred in denying Appellant's request to adduce testimony from Dr. Margaret Reardon, an expert in eyewitness identification, at the PCRA hearing. **See** Appellant's Br. at 14. As her testimony was *per se* inadmissible at trial, there was no basis for her testimony at the PCRA hearing. Thus, the court did not err.

to testify for the defense; and (5) the absence of the testimony of the witness was so prejudicial as to have denied the defendant a fair trial[.]" **Commonwealth v. Matias**, 63 A.3d 807, 810-11 (Pa. Super. 2013) (*en banc*).

It is clear from Simmons' testimony at the PCRA hearing that she was not willing to testify on Appellant's behalf during his trial. Although she was aware Appellant had been arrested, charged, and convicted of murder, Simmons refused to come forward until long after Appellant's trial:

> Q.   So, Ms. Simmons, you actually went down to the crime scene, checked that out. You went over, and you talked to [Appellant] fifteen minutes after you heard gunshots. Yet, you did nothing for two years to come forward and say that you had information that you believe could have helped [Appellant]?
>
> A.   For two years, no, I didn't. I was dealing with my own problems. As I said before, I am not going to put my children's lives in jeopardy.

N.T. PCRA at 22-23.

Because Simmons was not willing to testify for the defense, Appellant cannot establish the fourth element of the test set forth above. **See Matias**, 63 A.3d at 811.

Further, as noted *supra*, this is not the first time Appellant has sought to introduce testimony from Simmons. On direct appeal, we discussed the nature and character of this evidence:

> Our review of the certified record reflects the alleged after-discovered evidence that is possibly exonerating to Appellant is the portion of Ms. Simmons's statement placing Appellant on his

girlfriend's porch fifteen minutes after the gunshots were heard in the neighborhood. However, Appellant testified at trial and personally declared that it was only a five-minute walk from the scene of the shootings to his girlfriend's home. Therefore, testimony reveals that Appellant had ample time to participate in the commission of the crime, take the admitted five-minute walk to his girlfriend's house, and then be observed by Ms. Simmons on the porch of the girlfriend's home fifteen minutes after the crime occurred. Hence, we conclude that this evidence is not of such a nature and character that it would likely compel a different verdict if a new trial had been granted.

*Hereford*, No. 232 WDA 2015, unpublished memorandum at 8 (internal citations to record and footnotes omitted). The substance of this evidence was not exculpatory. Thus, even if we were to look past Simmons' unwillingness to testify on Appellant's behalf at his trial, Appellant cannot establish that he was prejudiced by the absence of this testimony. *See Matias*, 63 A.3d at 811 ("Counsel will not be found ineffective for failing to call a witness unless the petitioner can show that the witness's testimony would have been helpful to the defense.") (internal quotation marks and citation omitted).

In his third issue, Appellant contends that trial counsel was ineffective for failing to argue in closing that a prison note written by his Co-Defendant, DeAnthony Kirk, established (1) Appellant was not at the scene of the murders and (2) Appellant and his Co-Defendant did not know each other. *See* Appellant's Br. at 15-16. According to Appellant, this documentary evidence bolstered both his alibi defense as well as counsel's argument that Madden's eyewitness identification of Appellant was erroneous. *Id.* Thus, Appellant concludes, trial counsel's failure to reference this evidence was prejudicial and

deprived Appellant of a fair trial. *Id.* at 16 (citing in support trial counsel's concession, during testimony at the PCRA hearing, that his failure to highlight this evidence had no reasonable basis).

We discern no prejudice in trial counsel's failure to highlight this evidence during his closing argument. At trial, the Commonwealth introduced several prison notes authored by Appellant's Co-Defendant, one of which stated: "my co-de[fendant] wasn't their [sic] neither but he doesn't know me at all." PCRA Court Op. at 11 (quoting from the note); N.T. Trial, 8/3/11, at 420-24 (discussion concerning admissibility of notes). At first glance, this evidence appears exculpatory. However, we consider this singular piece of evidence in light of testimony from an investigator discussing cell phone records documenting multiple phone conversations and/or attempted conversations between Appellant and his Co-Defendant both before and after the murders. Further, these records revealed a gap in those communications at the approximate time the murders occurred. *See* N.T. Trial, 8/3/11, at 438-43; *see also* N.T. Trial, 8/4/11, at 523-24 (Appellant acknowledging that his street name appeared as a contact in Co-Defendant's phone). Thus, there was compelling evidence undermining any potential exculpatory benefit to Appellant from his Co-Defendant's note.

In light of this evidence, there is no reasonable probability that the jury's verdict would have been different had trial counsel highlighted the prison note during his closing argument. *See Koehler*, 36 A.3d at 132. Accordingly, Appellant is due no relief. *See Jarosz*, 152 A.3d at 350.

In his fourth issue, Appellant contends that trial counsel was ineffective for failing to challenge the affidavit of probable cause supporting the warrant for Appellant's arrest. Appellant's Br. at 16. According to Appellant, the affidavit omitted material facts and was based upon false information from an unreliable source. *Id.* However, as noted by the PCRA court, Appellant did not raise this issue in his Petition. PCRA Court Op. at 15; *see generally* Petition. Accordingly, it "is indisputably waived." ***Commonwealth v Santiago***, 855 A.2d 682, 691 (Pa. 2004) (further reasoning that permitting such belated amendments would "wrongly subvert the time limitation and serial petition restrictions of the PCRA") (quotation marks and citation omitted).

Finally, in his fifth issue, Appellant challenges several evidentiary decisions made by the PCRA court during its hearing. Appellant's Br. at 17. Appellant has failed to develop any meaningful argument in support of his claims: he has presented no pertinent discussion as to why the court's evidentiary decisions constitute an abuse of discretion, nor has he provided us with citations to relevant authority. This has hampered our ability to conduct meaningful appellate review. Accordingly, we deem his claims waived. *See **Commonwealth v. Hardy***, 918 A.2d 766, 771 (Pa. Super. 2007) (citing ***Commonwealth v. Gould***, 912 A.2d 869, 873 (Pa. Super. 2006); Pa.R.A.P. 2119).

For the aforementioned reasons, we discern no error in the PCRA court's decision to deny Appellant relief. ***See Jarosz***, 152 A.3d at 350. Accordingly, we affirm.

Order affirmed.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/8/2019